### PEOPLE v. GRAHAM

1. CRIMINAL LAW—EVIDENCE—INTERROGATION—CONSTITUTIONAL LAW —RIGHT TO REMAIN SILENT—WITNESSES—IMPEACHMENT.

    Evidence that a defendant chose to exercise his Fifth Amendment right to remain silent during interrogation is admissible for the purpose of impeaching defendant's testimony at trial (US Const, Am 5).

2. CRIMINAL LAW—INCONSISTENT TESTIMONY—DISCRETION.

    Question of whether a defendant's testimony at trial was inconsistent with his prior statement to a witness is within the discretion of the trial judge.

3. CRIMINAL LAW—WITNESSES—IMPEACHMENT—INCONSISTENT TESTIMONY.

    Testimony of a police officer that defendant was given an opportunity to tell a policeman his version of what had occurred and defendant refused to speak at all was properly admitted for the purpose of impeaching defendant's credibility where the refusal to speak was inconsistent with defendant's testimony at trial that he was constantly attempting to explain to the police what had occurred.

4. CRIMINAL LAW—REFUSAL TO SPEAK—INTERROGATION—WITNESSES —IMPEACHMENT.

    Defendant's refusal to speak during interrogation is admissible only to impeach his own inconsistent statements at trial.

---

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 21 Am Jur 2d, Criminal Law § 358.
    29 Am Jur 2d, Evidence § 638 et seq.

Appeal from Court of Appeals, Division 1, Mc-Gregor, P. J., and Holbrook and O'Hara, JJ., affirming Recorder's Court of Detroit, Henry L. Heading, J. Submitted October 7, 1971. (No. 12 October Term 1971, Docket No. 53,283.) Decided December 21, 1971.

29 Mich App 528 affirmed.

Eugene Graham was convicted of armed robbery. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *Martin I. Reisig,* Assistant Defender, for defendant on appeal.

WILLIAMS, J. This case presents two principal issues: 1) Whether the defendant's silence during interrogation can be used for the purpose of impeachment; 2) Whether the defendant's silence during interrogation was inconsistent with his testimony at trial.

Defendant Graham was convicted of robbery armed in Detroit Recorder's Court by a jury on June 1, 1967, and sentenced from 15 to 30 years in prison. The trial court denied the defendant's motion for a new trial, and the Court of Appeals affirmed his conviction. This Court granted the defendant's delayed application for leave to appeal on April 21, 1971.

The defendant was convicted of robbing a doughnut shop in Detroit at approximately 6:50 a.m. on February 12, 1966. Mrs. Bohlen, owner of the shop and complaining witness, testified that the defendant entered her shop at that time and, after ordering some doughnuts, pulled an opened knife on her. She testified further that the defendant then grabbed her wrist, and after demanding that she empty the cash register, put the loose change and the bills in his pocket. At this point in time, two policemen entered the shop and apprehended the defendant. One of the policemen testified that they stopped at the shop because they observed that the defendant "had the proprietress by the neck."

The defendant testified that after leaving a dice game at which he had won an uncertain amount of money, he entered the shop to purchase some doughnuts and for the purpose of exchanging some of his loose change for dollar bills. He stated that as he took money from his pocket to pay Mrs. Bohlen, his closed knife also came out. The defendant alleged that Mrs. Bohlen then became hysterical and that he attempted to calm her by holding her arm. When this failed, he alleged that he picked up his own money off of the counter and was leaving when the police arrived.

The defendant alleges that at the doughnut shop, in the police car, and upon his arrival at the cell block, he attempted to tell the police officers his side of the story. He testified that he was threatened and struck by the officers, and told to keep quiet both in the shop and in the police car. Officer McMahon testified at the trial that defendant did not try to talk with him on the way to the station.[1] At the

---

[1] During cross-examination, Officer McMahon testified as follows:
"*Q.* All right. Now when you conveyed Graham to the station, did he try to talk to you?
"*A.* No.

cell block, the defendant alleges that he told his entire story to Walter Williams, the turnkey.[2] Mr. Williams testified that he remembered seeing the defendant with a swollen eye, but remembered little else about him.

Subsequent to the defendant's testimony at trial, the people recalled Detective Hector Baeyens as a witness. Detective Baeyens testified that at 1 p.m. on February 12, 1966, approximately six hours after the defendant's arrest, he advised the defendant of his constitutional rights and asked the defendant " * * * if he wanted to tell me his side of the story."[3] Baeyens stated that the defendant replied he had "nothing to say." At this point in the trial, defense counsel's motion for a mistrial was denied.

---

"*Q.* Did he try to explain to you what happened, did you tell him to shut up?

"*A.* No, I didn't.

"*Q.* Did you have any conversation with him on the way to the station?

"*A.* No, I didn't."

*People* v. *Graham* (1971), 29 Mich App 528, 534.

[2] Counsel for defendant did not specifically raise this matter with Williams when he was testifying, nor did the people.

[3] Detective Baeyens' pertinent testimony is set out below:

"*Q.* What did you say to the defendant, if anything?

"*A.* I told the defendant that I was going to prepare a transfer on him, and I was going to send him down to the Hold-up Bureau.

"*Q.* Keep your voice up, please, witness, so that all might hear.

"*A.* All right. I'm sorry. I told the defendant that I was going to prepare a transfer on him and have him sent down to the Hold-up Bureau for further investigation. I also told the defendant that I was going to make a request for a warrant, and I asked the defendant if he wanted to tell me his side of the story.

"*Q.* Did the defendant reply to you?

"*A.* Yes, he did.

"*Q.* What reply did he make?

"*A.* He said he had nothing to say.

"*Q.* Did you have occasion to observe the physical condition of the defendant at this time?

"*A.* I did.

"*Q.*. Will you describe it to the Court and Jury, please?

"*A.* I try and make an observation of the defendant, because I may have to identify this man later on for some reason or other, and I noticed nothing about him unusual, no abrasions, contusions or lacerations in any area that I could see."

The defendant contends that no evidence is ever admissible to show that he chose to exercise his Fifth Amendment right to remain silent during interrogation. The United States Supreme Court has clearly stated that such evidence is admissible for the purpose of impeaching the testimony of the defendant at trial.

In *Grunewald* v. *United States* (1957), 353 US 391 (77 S Ct 963, 1 L Ed 2d 931) the United States Supreme Court reversed a defendant's conviction because the trial court had permitted cross-examination of the defendant concerning his exercise of his Fifth Amendment right against self-incrimination before a grand jury. The Court based its decision, however, on the fact that the defendant's plea of the Fifth Amendment before the Grand Jury was *not* inconsistent with his later testimony at trial. That such cross-examination would be permissible if it showed prior inconsistent statements was made clear by the Court:

"It is, of course, an elementary rule of evidence that prior statements may be used to impeach the credibility of a criminal defendant or an ordinary witness. But this can be done only if the judge is satisfied that the prior statements are in fact inconsistent. 3 Wigmore, Evidence, § 1040. And so the threshold question here is simply whether, in the circumstances of this case, the trial court erred in holding that Halperin's plea of the Fifth Amendment privilege before the grand jury involved such inconsistency with any of his trial testimony as to permit its use against him for impeachment purposes." 353 US 391, 418, 419.

The United States Supreme Court recently reaffirmed its position that otherwise inadmissible evidence may be used to impeach the testimony of a defendant. In *Harris* v. *New York* (1971), 401 US

222 (91 S Ct 643, 28 L Ed 2d 1) the Court affirmed the conviction of the defendant and stated that an otherwise inadmissible statement of the defendant could be utilized for impeachment purposes. The Court specifically addressed itself to the question of whether *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974) forbade the use of such statements for impeachment:

"Some comments in the *Miranda* opinion can indeed be read as indicating a bar to use of an uncounseled statement for any purpose, but discussion of that issue was not at all necessary to the Court's holding and cannot be regarded as controlling. *Miranda* barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel. It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards.

\* \* \*

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements." 401 US 222, 224, 226.

We now must turn to the question of whether defendant Graham's testimony at trial was inconsistent with the statement he made to Detective Baeyens. The question of inconsistency is first of all a question within the discretion of the trial judge. *Grunewald* v. *United States, supra,* 423. At trial, the defendant testified that he continually attempted

to give his version of the episode in the doughnut shop, but none of the policemen would even permit him to speak. He painted a picture of an innocent individual who attempted at every turn to explain a basic misunderstanding.

The testimony of Detective Baeyens is wholly inconsistent with the defendant's statements at trial. Baeyens testified that in fact approximately six hours after his arrest the defendant was given an opportunity to tell a policeman his version of what had occurred. The defendant refused to speak at all. This refusal to speak is inconsistent with his testimony at trial that he was constantly attempting to explain to the police what had occurred. Therefore such refusal to speak was properly admitted for the purpose of impeaching the defendant's credibility.

Defendant says he never denied that he was unwilling to tell his story to Detective Baeyens, and consequently he never said anything inconsistent to the testimony that Baeyens gave in alleged rebuttal. However, his whole posture of building up this desire to tell his story to police officers was certainly inconsistent with his unwillingness to talk to Detective Baeyens. Hence rebuttal testimony was permissible.[4]

In our holding today, we stress that the defendant's refusal to speak during interrogation is admissible only to impeach his own inconsistent statements at trial.

Affirmed.

---

[4] Not only was Detective Baeyens' testimony inconsistent with testimony of the defendant indicating that he was at all times anxious to explain how everything happened, but, since defendant made a considerable point of this, it obviously was an important part of his trial strategy. Therefore, this case is unlike *Grunewald, supra,* in which the Court stated, " * * * it could hardly have affected the Government's case seriously to exclude the matter completely." *Grunewald* v. *United States* (1957), 353 US 391, 424.

T. M. KAVANAGH, C. J., and ADAMS, T. E. BRENNAN, and SWAINSON, JJ., concurred with WILLIAMS, J.

BLACK and T. G. KAVANAGH, JJ., concurred in the result.