PEOPLE v GONYEA

Docket No. 71989. Argued October 3, 1984 (Calendar No. 7).—Decided December 28, 1984. Released February 1, 1985. Rehearing denied 422 Mich 1201.

Jerry E. Gonyea pled guilty in the Alpena Circuit Court of second-degree murder. The judgment of the Court of Appeals affirming the conviction was vacated by the Supreme Court, and the case was remanded to the trial court for further proceedings. 406 Mich 982 (1979). On remand, the defendant was convicted by a jury of second-degree murder. The court, Joseph P. Swallow, J., had denied the defendant's pretrial motion to suppress the use of certain statements that had deliberately been elicited from the defendant by the police following his original conviction. The Court of Appeals, R. B. Burns, P.J., and MacKenzie and Root, JJ., affirmed (Docket No. 57379). The defendant appeals.

In an opinion by Chief Justice Williams, joined by Justices Kavanagh and Levin, and an opinion by Justice Cavanagh, the Supreme Court *held:*

The inculpatory statements elicited from the defendant were inadmissible.

Chief Justice Williams, joined by Justices Kavanagh and Levin, stated that because the defendant's right to counsel was unconstitutionally denied at the time the inculpatory statements were elicited, the statements were inadmissible for impeachment and for substantive purposes.

1. Although the Sixth Amendment to the United States Constitution guarantees a defendant in a criminal action the right to counsel, the Michigan Constitution, article 1, § 20, provides adequate grounds for the decision of this case.

2. An attorney's advisory role does not end with sentencing; the right to counsel is applicable to post-trial interrogation

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 21A Am Jur 2d, Criminal Law § 975.

29 Am Jur 2d, Evidence §§ 613, 614.

Propriety of using otherwise inadmissible statement, taken in violation of *Miranda* rule, to impeach defendant's credibility—state cases. 14 ALR4th 676.

Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.

where appeal is not final. Because, in this case, the appeal process was not final, the defendant had the right to counsel at the time the inculpatory statements were elicited. Because the defendant did not intentionally and intelligently waive his right to counsel the statements were taken in violation of his right.

3. The statements at issue were not admissible for substantive purposes, as was conceded by the prosecution. Nor were the statements admissible for impeachment purposes. To permit law enforcement officers to obtain statements from the defendant in violation of his right to counsel, and to use those statements to attack the defendant, would be to permit an attack on the very foundation of our criminal justice system.

Justice Cavanagh, concurring in the result, stated that under the facts of the case, the defendant's Sixth Amendment right to counsel had been violated, and, thus, the inculpatory statements made by the defendant were inadmissible for any purpose.

Reversed and remanded for a new trial.

Justice Ryan, joined by Justices Brickley and Boyle, dissenting, questioned the adequacy of the support of case law for the opinion of Chief Justice Williams and the propriety of proposing a decision of the case on the basis of state or federal constitutional law in light of the absence of adequate briefing and argument of the issues addressed in the opinion. Assuming, but not conceding, that state and federal rights to counsel were violated in this case, the defendant's statements nonetheless were admissible for impeachment purposes providing they were voluntary.

126 Mich App 177; 337 NW2d 325 (1983) reversed.

OPINION BY WILLIAMS, C.J.

1. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO COUNSEL.

*An attorney's advisory role does not end with sentencing; the right to counsel is applicable to post-trial interrogation where appeal is not final (Const 1963, art 1, § 20).*

2. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO COUNSEL — POST-TRIAL INCULPATORY STATEMENTS.

*Statements elicited by police from a defendant after sentencing, but before appeal was final, in the absence of counsel and an intentional and intelligent waiver of the right to counsel by the defendant, precluded admission of the statements in a subsequent trial for the same crime for impeachment or substantive purposes (Const 1963, art 1, § 20).*

Opinion by Cavanagh, J.

3. Criminal Law — Constitutional Law — Right to Counsel.

Statements made by a defendant post trial to police where defense counsel had not given permission to the police to speak to the defendant, the defendant requested to know his counsel's position regarding the questioning, and the police informed the defendant that his counsel had given the police permission to question him violated his Sixth Amendment right to counsel and were inadmissible at a subsequent trial for any purpose (US Const, Am VI).

Dissenting Opinion by Ryan, J.

4. Criminal Law — Constitutional Law — Right to Counsel — Inculpatory Statements — Impeachment.

Inculpatory statements elicited from a defendant in the absence of counsel by sheriff's detectives immediately after sentencing, although inadmissible as substantive evidence in a subsequent trial of the same cause, nonetheless were admissible for impeachment purposes provided they were voluntary (US Const, Am VI; Const 1963, art 1, § 20).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Theodore O. Johnson,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the plaintiff.

State Appellate Defender (by *Peter Jon Van Hoek)* for the defendant.

Williams, C.J.

I. Introduction

The issue in this case is whether inculpatory statements deliberately elicited from a defendant by sheriff's detectives immediately after sentencing and in the absence of retained or appointed counsel are admissible under Const 1963, art 1, § 20 for impeachment purposes in a subsequent trial of the same cause. For purposes of this case, we do not decide whether the inculpatory state-

ments were involuntary or not. This is an issue of first impression in this Court and has not been ruled on by the United States Supreme Court.

The above issue arises from a situation where the defendant, after being sentenced on a plea-based conviction which was later overturned, was prodded into accompanying two sheriff's detectives to retrace his route on the night of the killing he was accused of having committed. The defendant had requested consultation with his counsel, but the officers told the defendant that counsel had given them permission to speak with him. It is unclear whether the detectives were mistaken or prevaricated about the permission from counsel. The evidence shows that defense counsel did not give the detectives permission to talk with the defendant. During his trip with the detectives, defendant made certain inculpatory statements.

We hold that under Const 1963, art 1, § 20 the defendant had the right to counsel when the inculpatory statements were elicited from him. Since these statements were elicited in the absence of counsel, defendant's right to counsel was violated unless the prosecution can show that defendant waived his right. In this regard, we hold that the prosecution did not meet its burden of proving that the defendant knowingly, intelligently, and intentionally relinquished his right to counsel. Finally, we hold that, under Const 1963, art 1, § 20, the inculpatory statements in question elicited in violation of defendant's right to counsel are inadmissible for impeachment, as well as for substantive purposes. We reverse the judgment of the Court of Appeals and remand for a new trial.

We note that the defendant also argues that the inculpatory statements in question were inadmissible for impeachment purposes on three other grounds: first, because the statements were invol-

untary; second, because the statements were taken in violation of *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378, *reh den* 452 US 973; 101 S Ct 3128; 69 L Ed 2d 984 (1981); and third, because the admission of the statements was more prejudicial than probative, see MRE 403. In light of our resolution of the art 1, § 20 right to counsel issue, we find it unnecessary to address any of these arguments. In addition, the defendant raises three separate issues. The first concerns the admissibility of certain rebuttal testimony. The second concerns alleged errors in the prosecutor's closing argument. The third deals with the sentencing judge's failure to consider a portion of a presentence psychiatric evaluation. We do not consider these three alleged errors inasmuch as they would not be dispositive and are unlikely to occur on retrial.

## II. FACTS

On October 30, 1980, the defendant, Jerry E. Gonyea, was convicted of second-degree murder following a jury trial in Alpena Circuit Court. On February 20, 1981, the defendant was sentenced to life imprisonment. The Court of Appeals affirmed. We granted leave to appeal.

The defendant was convicted of having shot Leslie Herron. It seems that in the early morning hours of February 12, 1976, Ms. Herron left an Alpena bar in her car. The defendant followed her to a driveway on Catherine Street. At that point Ms. Herron entered the defendant's car, either through force or voluntarily. The two proceeded to a point several miles away on Hamilton Road, where Ms. Herron was shot. The prosecutor attempted to show that defendant intentionally shot Ms. Herron because she had continually spurned his advances.

The defendant argued that the shooting was accidental as hereinafter set forth. He testified that he was having an affair with Ms. Herron and that when he informed her that he was breaking off their relationship, she became extremely upset. As they were driving around in defendant's car, Ms. Herron complained that her toe had been injured. The defendant stopped the car and got out. He went around to the passenger side and opened the door. He then opened the glove compartment to obtain some tissue for Ms. Herron's toe. Ms. Herron, while still in the car, placed her feet outside the car on the pavement. She saw a gun in the glove compartment; and while defendant was leaning over her, she grabbed the gun. The two struggled over the gun and it discharged. The defendant indicated that he did not know who was holding the gun when it went off.

On November 5, 1976, the defendant pled guilty to second-degree murder in connection with the shooting death of Ms. Herron. He was sentenced on November 10, 1976, to life imprisonment. After sentencing, the defendant was taken to a separate room for holding purposes. The defendant was approached by two sheriff's detectives who asked the defendant to go with them so that they could clear up certain unresolved matters in their investigation regarding the killing. They reminded the defendant that he had earlier promised to accompany them when it was all over. The defendant asked, "What about my attorney? Shouldn't he be present?" The detectives advised the defendant that they had spoken with his attorney and that counsel had given them permission to talk with him.

It seems that the detectives had approached defense counsel several times seeking permission to talk to the defendant. The testimony indicated

that defense counsel at no time gave them permission to talk to the defendant.

In any event, following the above representations made to defendant, he agreed to accompany the sheriff's detectives. The three men, in a sheriff's car, then retraced the route defendant took on the night of the killing. Among other things, the defendant told the detectives that when the shooting occurred, both he and Ms. Herron were standing outside the car, and that he was holding the gun.

After a lengthy appellate process, the defendant's plea-based conviction was reversed. In the subsequent trial, defendant filed a pretrial motion to suppress for impeachment purposes the use of the statements defendant made to the detectives on November 10, 1976. The prosecution conceded that the statements were inadmissible in its case in chief. Following a hearing, the trial court denied defendant's motion. The defendant moved for reconsideration and filed an application for leave to appeal to the Court of Appeals. Both were denied.

During trial, the trial judge ruled that of the November 10, 1976 statements sought to be used for impeachment, only defendant's statements concerning the position of Ms. Herron and the defendant, and those indicating that defendant was holding the gun, were inconsistent with defendant's trial testimony. Therefore, only those statements could be used for impeachment. On rebuttal, the prosecutor admitted evidence in accordance with the trial judge's ruling.

### III. WAIVER OF COUNSEL: ADMISSION AS DIRECT EVIDENCE

The Sixth Amendment of the United States

Constitution, *inter alia,* guarantees a defendant the right "to have the Assistance of Counsel for his defence." US Const, Am VI. This right was adopted in those very same words in Const 1963, art 1, § 20, where it is stated that "the accused shall have the right . . . to have the assistance of counsel for his defense . . . ."

While both of the above provisions guarantee the right to counsel, in rendering our decision today, we rely solely upon the Michigan Constitution. Const 1963, art 1, § 20. Since Const 1963, art 1, § 20 provides an adequate state ground for our decision, we find it unnecessary to address the issues before us under the United States Constitution. Although we do not reach the federal question, we will, however, look to cases construing the Sixth Amendment. Inasmuch as Const 1963, art 1, § 20 and the Sixth Amendment are identical in language insofar as the right to counsel is concerned, a review of relevant federal cases can guide us in interpreting our constitution.

There are certain rules associated with the art 1, § 20/Sixth Amendment right to counsel that simply cannot be questioned. A person is entitled to the assistance of counsel at least "at or after the time that judicial proceedings have been initiated against him . . . ." *Brewer v Williams,* 430 US 387, 398; 97 S Ct 1232; 51 L Ed 2d 424, *reh den* 431 US 925; 97 S Ct 2200; 53 L Ed 2d 240 (1977), quoting *Kirby v Illinois,* 406 US 682, 689; 92 S Ct 1877; 32 L Ed 2d 411 (1972). Any interrogation after that date without the presence of an attorney constitutes a violation of the defendant's right to counsel, unless the defendant has waived his right. *Brewer v Williams, supra,* pp 401-404; *Massiah v United States,* 377 US 201, 204-206; 84 S Ct 1199; 12 L Ed 2d 246 (1964). "[T]he right to counsel does

not depend upon a request by the defendant . . . ."
*Brewer v Williams, supra,* p 404.

In the instant case, there is no question that the inculpatory statements were deliberately elicited from the defendant after judicial proceedings had been initiated against him. The only question might be whether the judicial proceedings had ended, because the inculpatory statements were not elicited until after sentencing. In this regard we agree with the Court of Appeals that the "right to counsel is applicable to post-trial statements when appeal is not final. See *Cahill v Rushen,* 501 F Supp 1219 (ED Cal, 1980) *[aff'd* 678 F2d 791 (CA 9, 1982)]." *People v Gonyea,* 126 Mich App 177, 183; 337 NW2d 325 (1983). If the right to counsel is to remain appropriately meaningful, the right must extend until the appeal is final. An attorney's advisory role does not end at sentencing. See *Cahill v Rushen,* 678 F2d 794-795; *Cahill v Rushen,* 501 F Supp 1223. This is especially true in light of the fact that the appellate process is not the end of a defendant's prosecution, and may very well be just a new beginning, in that frequently trial errors result in the ordering of new trials on appeal. See *Cahill v Rushen,* 678 F2d 794-795; *Cahill v Rushen,* 501 F Supp 1223. Thus we hold that the defendant here did have the right to counsel after sentencing when he was with the detectives.

Since the defendant had the right to counsel at the time when the inculpatory statements were deliberately elicited from him, the only real issue is whether he waived this right. In *Johnson v Zerbst,* 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938), the Court stated:

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The

determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

This basic test was reaffirmed in *Brewer v Williams,* 430 US 387, 404; 97 S Ct 1232; 51 L Ed 2d 424 (1977):

"[I]t was incumbent upon the State to prove 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v Zerbst,* 304 US at 464.

\* \* \*

"[C]ourts indulge in every reasonable presumption against waiver, *e.g., Brookhart v Janis* [384 US 1, 4; 86 S Ct 1245; 16 L Ed 2d 314 (1966)]; *Glasser v United States,* 315 US 60, 70 [62 S Ct 457; 86 L Ed 680 (1942)]. This strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings. *Schneckloth v Bustamonte,* 412 US 218, 238-240 [93 S Ct 2041; 36 L Ed 2d 854 (1973)]; *United States v Wade,* 388 US [218, 237; 87 S Ct 1926; 18 L Ed 2d 1149 (1967)]."

From the foregoing it is clear that the *Brewer/ Zerbst* waiver rule requires that for a valid waiver, defendant must know of his right and must intelligently and intentionally relinquish it. This was illustrated by Justice Marshall in his dissenting opinion in *Wyrick v Fields,* 459 US 42, 54; 103 S Ct 394; 74 L Ed 2d 214 (1982):

"The State must show that the defendant intelligently and knowingly relinquished his right not to be questioned in the absence of counsel. The State can establish a waiver only by proving 'an intentional relinquishment or abandonment' of the right to have counsel present. *Brewer v Williams, supra,* at 404, quoting *Johnson v Zerbst,* 304 US 458, 464 (1938)."

Finally, in *Adams v McCann,* 317 US 269, 279; 63 S Ct 236; 87 L Ed 268, *reh den* 317 US 713; 87 L

Ed 568 (1942), the Court explained the importance of the fact that the defendant's choice be made with open eyes:

"The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. The public conscience must be satisfied that fairness dominates the administration of justice. An accused must have the means of presenting his best defense. He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court. But the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open. *Johnson v Zerbst,* 304 US 458, 468-69."

The above principles established in *Zerbst, Adams,* and *Brewer* were, in fact, noted in my separate opinion in *People v Leonard,* 421 Mich 207, 219-227; 364 NW2d 625 (1984), in relation to Const 1963, art 1, § 20. On the facts of this case, we are not convinced that there was a valid waiver under the standards set forth above.

While there is some indication in the record that at some point the defendant stated that he did not need his attorney, the record is clear that when the detectives asked the defendant to accompany them and retrace the events that took place on the eve of the killing, defendant specifically asked about his attorney. More importantly, the detectives responded to defendant's inquiry by telling him that defense counsel had given them permission to question him, when in fact defense counsel had refused such permission. Thus it was impossible for the defendant to have any sort of informed

choice. Therefore, we hold that the defendant did not intentionally and intelligently waive his known right to counsel.

In accordance with the above discussion, since the inculpatory statements in question were deliberately elicited from the defendant at a time when he had the right to counsel, and since the defendant did not waive his right to counsel, we hold that the statements were taken in violation of his art 1, § 20 right to counsel.

IV. CONFESSION IN VIOLATION OF DEFENDANT'S RIGHT TO COUNSEL FOR IMPEACHMENT

Now that we have concluded that the defendant's inculpatory statements were taken in violation of his right to counsel, we determine whether the trial court erred in admitting those statements to impeach the defendant's testimony. The prosecutor urges us to extend the reasoning of *Harris v New York*, 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), and hold that while statements taken in violation of defendant's right to counsel may not be used for substantive purposes, they may be used to impeach the defendant. The defendant, on the other hand, urges us to reject the analogy of the *Harris* Fifth Amendment decision to a Sixth Amendment violation of counsel situation, and to adopt an approach under Const 1963, art 1, § 20, which would render statements taken in violation of defendant's right to counsel inadmissible for either substantive or impeachment purposes. We find the logic of the defendant's position more compelling.

Initially, we repeat that there is no question here as to the inadmissibility of defendant's statements for substantive purposes. At trial, the prosecutor conceded that the statements were not ad-

missible for substantive purposes and only sought their admission as impeachment evidence. The trial judge's ruling focused solely on that issue and ruled the statements admissible.

In *Harris v New York, supra,* the defendant was impeached on cross-examination with statements he made to the police immediately following his arrest. The prosecutor had conceded that such statements were inadmissible in his case in chief under *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and defendant made "no claim that the statements made to the police were coerced or involuntary." *Harris, supra,* p 224. The United States Supreme Court held that statements taken in violation of *Miranda,* while not admissible in the prosecution's case in chief, could be used to impeach the defendant:

"Some comments in the *Miranda* opinion can indeed be read as indicating a bar to use of an uncounseled statement for any purpose, but discussion of that issue was not at all necessary to the Court's holding and cannot be regarded as controlling. *Miranda* barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel. It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards.

\* \* \*

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris, supra,* p 226. See *Oregon v Hass,* 420 US 714; 95 S Ct 1215; 43 L Ed 2d 570 (1975).

We embraced *Harris* rationale in *People v Graham,* 386 Mich 452; 192 NW2d 255 (1971), which, like *Harris,* involved an alleged violation of Fifth

Amendment rights.[1] We refuse, however, to embrace *Harris* here. *Harris* is distinguishable on two grounds. First, *Harris* involved Fifth Amendment rights, not art 1, § 20/Sixth Amendment rights as we are faced with here. Secondly, we note that *Harris* is factually inapposite. The *Harris* police misconduct was not nearly as flagrant as is present in this case.[2] In *Harris,* the prosecutor sought to impeach the defendant with voluntary statements made to police immediately after his arrest. Although the defendant had not been properly advised of his *Miranda* rights, there was no indication that defendant was rushed or prodded into making the statements. By contrast, in this case, the detectives without permission of counsel, approached the defendant in a psychologically vulnerable condition after receiving a life sentence and, in response to his inquiry about counsel, told him erroneously that they had defense counsel's permission to talk to him and then proceeded to coax defendant into retracing with them the events that transpired on the night of the killing.

The *Harris* line of cases involves a balancing of "the incremental deterrence of police illegality against the strong policy against countenancing perjury." *New Jersey v Portash,* 440 US 450, 458; 99 S Ct 1292; 59 L Ed 2d 501 (1979). The *Harris*

---

[1] Some members of this Court adopted the *Harris* rationale in *People v Esters,* 417 Mich 34; 331 NW2d 211 (1982). *Esters,* like *Harris* and *Graham,* involved a violation of Fifth Amendment rights, not Sixth Amendment rights.

[2] We note that this Court distinguished *Harris* in *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), *cert den Michigan v Reed,* 422 US 1044, 1048; 95 S Ct 2660, 2665; 45 L Ed 2d 696, 701 (1975), on the ground that *Harris* involved a violation of Fifth Amendment *Miranda* warnings, whereas the Court there was confronted with an involuntary confession. *Reed* held that involuntary confessions are inadmissible for impeachment as well as for substantive purposes. Here we are confronted with an issue concerning the art 1, § 20/Sixth Amendment right to counsel, and do not address the issue concerning the alleged Fifth Amendment involuntary nature of defendant's statements.

line of cases concluded that the balancing weighed
in favor of admitting the inculpatory statements
for impeachment. In the instant case, while we
still do not condone perjury, we think that the
violation of the defendant's right to counsel by the
detectives was so egregious that it tips the scale
against admissibility of the evidence.

While all constitutional rights are important,
the right to counsel has always been elevated to a
particularly lofty status, because without this
right the defendant may be denied the practical
enjoyment of his other rights. *People v Leonard,*
421 Mich 219-224. See *United States v Mohabir,*
624 F2d 1140, 1149 (CA 2, 1980). In *Johnson v
Zerbst,* 304 US 458, 462-463; 58 S Ct 1019; 82 L Ed
1461 (1938), the United States Supreme Court
stated:

"The Sixth Amendment guarantees that 'In all crimi-
nal prosecutions, the accused shall enjoy the right . . .
to have the Assistance of Counsel for his defence.' This
is one of the safeguards of the Sixth Amendment
deemed necessary to insure fundamental human rights
of life and liberty. Omitted from the Constitution as
originally adopted, provisions of this and other Amend-
ments were submitted by the first Congress convened
under that Constitution as essential barriers against
arbitrary or unjust deprivation of human rights. The
Sixth Amendment stands as a constant admonition that
if the constitutional safeguards it provides be lost,
justice will not 'still be done.' It embodies a realistic
recognition of the obvious truth that the average defen-
dant does not have the professional legal skill to protect
himself when brought before a tribunal with power to
take his life or liberty, wherein the prosecution is
presented by experienced and learned counsel. That
which is simple, orderly and necessary to the lawyer, to
the untrained layman may appear intricate, complex
and mysterious."

In light of the particular importance of the right

to counsel, we are hesitant to tolerate any transgression. To permit law enforcement officers to obtain statements from the defendant in violation of his right to counsel, and to use those statements to attack the defendant and his case, would be to permit an attack on the very foundation of our criminal justice system. When the police are permitted to commit such a violation, the effect is to gnaw at the very pillars of democracy. The United States Supreme Court in *Spano v New York*, 360 US 315, 320-321; 79 S Ct 1202; 3 L Ed 2d 1265 (1959), made the following comments with respect to involuntary confessions:

"The abhorrence of society to the use of involuntary confessions does not turn alone on their inherent untrustworthiness. It also turns on the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves. Accordingly, the actions of police in obtaining confessions have come under scrutiny in a long series of cases. Those cases suggest that in recent years law enforcement officials have become increasingly aware of the burden which they share, along with our courts, in protecting fundamental rights of our citizenry, including that portion of our citizenry suspected of crime. The facts of no case recently in this Court have quite approached the brutal beatings in *Brown v Mississippi*, 297 US 278 (1936), or the 36 consecutive hours of questioning present in *Ashcraft v Tennessee*, 322 US 143 [64 S Ct 921; 88 L Ed 1192] (1944). But as law enforcement officers become more responsible, and the methods used to extract confessions more sophisticated, our duty to enforce federal constitutional protections does not cease. It only becomes more difficult because of the more delicate judgments to be made."

Justice Brandeis, dissenting in *Olmstead v*

*United States,* 277 US 438, 485; 48 S Ct 564; 72 L Ed 944 (1928), echoed a similar sentiment:

"Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal— would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face."

Although the above quotations were made with reference to involuntary confessions, we find the reasoning particularly compelling here, where a right so important as the right to counsel is at stake. As previously noted, the right to counsel both ensures the defendant an adequate defense against all the forces of the state, and ensures the practical enjoyment of many other rights accorded a defendant. Thus any transgression of this right not only leaves the defendant vulnerable or helpless against the system but jeopardizes the realization of other rights. A right so important to the sound maintenance of our system of justice must be protected with the broadest prophylactic measures possible. Therefore, we must hold that a confession extracted in violation of defendant's right to counsel is not only inadmissible for substantive purposes, but inadmissible for impeachment purposes.

In support of the position we have just taken, we

note that the right to counsel has also been argued
to be of such fundamental importance that it was
unnecessary for us to even balance the violation of
this right against condoning perjury. In other
words, regardless of other considerations the right
to counsel is so important that it must automati-
cally be accorded the greatest protection. Support
for this position can be derived from the Fifth
Amendment case of *New Jersey v Portash,* 440 US
450, 458-459; 99 S Ct 1292; 59 L Ed 2d 501 (1979).
In *Portash,* the defendant testified at a grand jury
proceeding with the understanding that under
New Jersey law, neither his statements nor any
evidence derived from them could be used in sub-
sequent criminal proceedings against him. Defen-
dant was later charged with misconduct in office
and with extortion by a public official. At trial, the
trial judge ruled that the defendant's grand jury
testimony could be used to impeach him. As a
consequence, the defendant refused to take the
stand and was found guilty.

On appeal, the state, *inter alia,* argued that the
rationale of *Harris* should be applied to the facts
therein. In rejecting the prosecutor's argument
and upholding the reversal of defendant's convic-
tion, the *Portash* Court stated:

"But the State has overlooked a crucial distinction
between those cases and this one. In *Harris* and *Hass*
the Court expressly noted that the defendant made 'no
claim that the statements made to the police were
coerced or involuntary,' *Harris v New York, supra,* at
224; *Oregon v Hass, supra,* at 722-723. That recognition
was central to the decisions in those cases.
"The Fifth and Fourteenth Amendments provide that
no person 'shall be *compelled* in any criminal case to be
a witness against himself.' As we reaffirmed last Term,
a defendant's compelled statements, as opposed to state-
ments taken in violation of *Miranda,* may not be put to

any testimonial use whatever against him in a criminal trial. 'But *any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law.' (Emphasis in original.) *Mincey v Arizona,* 437 US 385, 398 [98 S Ct 2408; 57 L Ed 2d 290 (1978)].

"Testimony given in response to a grant of legislative immunity is the essence of coerced testimony. In such cases there is no question whether physical or psychological pressures overrode the defendant's will; the witness is told to talk or face the government's coercive sanctions, notably, a conviction for contempt. The information given in response to a grant of immunity may well be more reliable than information beaten from a helpless defendant, but it is no less compelled. The Fifth and Fourteenth Amendments provide a privilege against *compelled* self-incrimination, not merely against unreliable self-incrimination. Balancing of interests was thought to be necessary in *Harris* and *Hass* when the attempt to deter unlawful police conduct collided with the need to prevent perjury. Here, by contrast, we deal with the constitutional privilege against compulsory self-incrimination in its most pristine form. Balancing, therefore, is not simply unnecessary. It is impermissible."

By analogy, we are here confronted with the constitutional right to counsel "in its most pristine form." Consequently, it may be argued that no balancing is permissible, and the confession must be held inadmissible for both substantive and impeachment purposes. The United States Court of Appeals, Second Circuit, applied exactly this rationale to a situation involving the admissibility for impeachment purposes of a confession taken in violation of a defendant's Sixth Amendment right to counsel in *United States v Brown,* 699 F2d 585 (CA 2, 1983).

In light of the foregoing discussion, we conclude that whether, on the basis of a balancing approach or not, any inculpatory statements extracted from a defendant in violation of his Const 1963, art 1,

§ 20 right to counsel are inadmissible for both substantive and impeachment purposes.

In section II, part A, we determined that the inculpatory statements made to the sheriff's detectives by the defendant after sentencing, were taken in violation of defendant's Const 1963, art 1, § 20 right to counsel. In this section, section II, part B, we concluded that any such statements were inadmissible for impeachment as well as for substantive purposes. The trial court here ruled that the prosecutor could impeach the defendant with the statements taken in absence of counsel. In this ruling, the trial court erred. Defendant's statements are not admissible to impeach him.

## V. CONCLUSION

The defendant had the right to counsel when the inculpatory statements were elicited from him. This right was unconstitutionally denied him. These statements, taken in violation of defendant's right to counsel, are inadmissible for impeachment purposes as well as for substantive purposes under Const 1963, art 1, § 20. The trial judge and the Court of Appeals rulings were to the contrary. In this regard, their rulings were erroneous.

We reverse the judgment of the Court of Appeals and remand for a new trial.

KAVANAGH and LEVIN, JJ., concurred with WILLIAMS, C.J.

CAVANAGH, J. *(concurring)*. In ruling that the statement in question was voluntary and admissible for impeachment purposes, the trial court clearly proceeded on the premise that defendant's Sixth Amendment right to counsel had not terminated at his sentencing. That court stated:

"Counsel for defendant at his first trial now testifies that he recalls talking to the subject police officers on two to five occasions unequivocally, states that he, at no time, advised the police officers that it was permissible for his client to discuss the offense with them; and the Court so finds.

"By the above finding, the Court does not dismiss a situation where the police officers were under a mistaken impression that such permission had been given. The Court does find that a brief conversation did occur as between the police officers and defense counsel shortly after the sentencing of Defendant but further concludes that a conversation under those circumstances, irrespective of its content, cannot constitute a waiver by counsel of Defendant's constitutional right.

"The factual issue of permission of counsel in this Court's analysis is moot and not controlling. For even assuming the statement was made by the officers, without permission, the remaining factual circumstances still cause this Court to conclude that Defendant's statements, without regard to their truth or falsity, were voluntarily rendered."

The Court of Appeals in this case found "a defendant's Sixth Amendment right to counsel is applicable to post-trial statements when appeal is not final." *People v Gonyea,* 126 Mich App 177, 183; 337 NW2d 325 (1983). Before this Court, the people have not disagreed that this defendant's Sixth Amendment right to counsel is implicated.

Thus, this case comes to us with the predicate that this defendant's Sixth Amendment right to counsel was violated, indeed, deliberately so. The trial court expressly found that defense counsel did not give permission for the officers to speak to defendant, that defendant asked the officers about his counsel's position regarding the questioning, and that the officers told defendant his counsel had given permission for defendant to speak to them. Under these facts, I concur with my brother

WILLIAMS' conclusion that the statement in question is inadmissible for any purpose.

RYAN, J. *(dissenting)*. My colleagues' opinion holds "that the inculpatory statements made to the sheriff's detectives by the defendant after sentencing were taken in violation of defendant's Const 1963, art 1, § 20 right to counsel." It further holds that "such statements were inadmissible for impeachment as well as for substantive purposes." In apparent eagerness to decide that the statements made by the defendant after he pled guilty to second-degree murder and was sentenced to life imprisonment are inadmissible under art 1, § 20 of the Michigan Constitution, my colleagues also decide several issues which, in my opinion, were not adequately briefed, argued, nor addressed below. Because I question the propriety of deciding this case on the basis of Const 1963, art 1, § 20, or the Sixth Amendment of the United States Constitution, and because I believe the holdings of the opinion are inadequately supported by case law and logic, I dissent.

For expediency's sake, I do not restate the facts of this case. However, to fully understand the posture of this case, some further explanation of the proceeding below is necessary.

Before defendant's subsequent trial, the prosecutor conceded that defendant's post-conviction, post-sentencing statements were inadmissible in its case in chief because no *Miranda* warnings had been given. The arguments at the hearing on defendant's pretrial motion to suppress the use of these statements for impeachment purposes focused on the *voluntariness* of the statements in question. Applying the test set forth in *Mallory v Hogan,* 378 US 1; 84 S Ct 1489; 12 L Ed 2d 653 (1964), the trial court found "that the Defendant

clearly understood his options and that he freely and voluntarily elected to go with the officers and to describe the events of the charged offense." Therefore, the trial court ruled that the statements would be admissible to impeach defendant's trial testimony, if it proved to be inconsistent with those prior statements, under the rule of *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971).

On appeal from defendant's conviction of second-degree murder, the Court of Appeals was "not left with a definite and firm conviction that the trial judge erred in holding that the statement made by defendant to the police subsequent to his prior sentencing was voluntarily made." *People v Gonyea,* 126 Mich App 177, 183; 337 NW2d 325 (1983). In response to defendant's contention that the trial court erred by allowing his trial testimony to be impeached by his prior inconsistent statement, the Court of Appeals stated:

"It was not disputed that the statement would have been inadmissible as substantive evidence because it was obtained in violation of the rules stated in *Massiah v United States,* 377 US 201; 84 S Ct 1199; 12 L Ed 2d 246 (1964), and *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966). However, violation of the *Miranda* rule does not prevent use of defendant's statement for impeachment purposes provided the statement was not coerced or involuntary. *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971); *Oregon v Hass,* 420 US 714; 95 S Ct 1215; 43 L Ed 2d 570 (1975); *Mincey v Arizona,* 437 US 385; 98 S Ct 2408; 57 L Ed 2d 290 (1978). Similar use is permitted of statements obtained in violation of the *Massiah* rule. *United States v Frank,* 520 F2d 1287, 1291 (CA 2, 1975); *United States v Taxe,* 540 F2d 961, 968-969 (CA 9, 1976), *cert den* 429 US 1040 (1977); *United States v McManaman,* 606 F2d 919, 924-925 (CA 10, 1979).

\* \* \*

"We find the trial court properly allowed the use of the statements here for impeachment purposes although they could not have been used in the prosecutor's case in chief. That a defendant should not be permitted to perjure himself and then insulate his false statements behind an exclusionary rule should apply equally to a Sixth Amendment violation." *Gonyea, supra,* pp 180-181, 184.

Defendant's primary argument on appeal to this Court is that his statements were involuntary, and therefore inadmissible for any purpose. *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), *cert den* 422 US 1044. In response, the prosecutor asks that we affirm the trial court's determination of voluntariness, and apply the reasoning of *Harris v New York, supra,* so as to allow the use of defendant's statements for impeachment purposes. The state does *not* argue that defendant's Sixth Amendment right to counsel under *Massiah v United States,* 377 US 201; 84 S Ct 1199; 12 L Ed 2d 246 (1964), was *not* violated. Rather, it contends that, assuming, *arguendo,* that *Massiah* was violated, defendant's statements may nevertheless be used to impeach his trial testimony.

In reaching the conclusion that defendant's prior inconsistent statements were inadmissible for any purpose, my colleagues decide that the Const 1963, art 1, § 20 right to counsel extends to the post-conviction, post-sentencing questioning of defendant by the police, and that defendant did not waive this right. Thus, a considerable portion of my colleagues' opinion is devoted to deciding issues which the parties do not apparently dispute and upon which the courts below did not rule.[1]

---

[1] In addressing the defendant's Sixth Amendment claim, the Court of Appeals stated:

My colleagues purport to rely solely upon the Michigan Constitution in rendering their decision. The opinion states:

"Since Const 1963, art 1, § 20 provides an adequate state ground for our decision, we find it unnecessary to address the issues before us under the United States Constitution. Although we do not reach the federal question, we will, however, look to cases construing the Sixth Amendment. Inasmuch as Const 1963, art 1, § 20 and the Sixth Amendment are identical in language insofar as the right to counsel is concerned, a review of relevant federal cases can guide us in interpreting our constitution."

Despite this purported state constitutional basis, the opinion of my colleagues relies almost exclusively on federal case law. Moreover, as my colleagues note, the federal and state constitutional right to counsel provisions are phrased in identical language. Because I view my colleagues' "adequate state ground" analysis as a pretext for evading review by the United States Supreme Court, under the jurisdictional standard set forth in *Michigan v Long,* 463 US 1032; 103 S Ct 3469; 77 L Ed 2d 1201 (1983), I reject that analysis.

In one brief paragraph, the opinion holds that the Sixth Amendment, art 1, § 20 right to counsel extends to the post-conviction, post-sentencing questioning of the defendant by the police. In support of this holding, the opinion cites the deci-

"Although the issue has not been decided by a Michigan court or by the United States Supreme Court, we find a defendant's Sixth Amendment right to counsel is applicable to post-trial statements when appeal is not final. See *Cahill v Rushen,* 501 F Supp 1219 (ED Cal, 1980)." *People v Gonyea,* 126 Mich App 177, 183; 337 NW2d 325 (1983).

This portion of the Court of Appeals decision, however, was clearly not necessary to its holding that the defendant's statements were properly admitted for impeachment purposes and, aside from being a mere dictum, is, for the reasons stated hereafter, most unpersuasive.

sion of a single federal trial court, *Cahill v Rushen,* 501 F Supp 1219 (ED Cal, 1980), *aff'd* 678 F2d 791 (CA 9, 1982). My colleagues' opinion concludes that:

> "[I]f the right to counsel is to remain appropriately meaningful, the right must extend until the appeal is final. An attorney's advisory role does not end at sentencing. See *Cahill v Rushen,* 678 F2d 794-795; *Cahill v Rushen,* 501 F Supp 1223. This is especially true in light of the fact that the appellate process is not the end of a defendant's prosecution, and may very well be just a new beginning, in that frequently trial errors result in the ordering of new trials on appeal. See *Cahill v Rushen,* 678 F2d 794-795; *Cahill v Rushen,* 501 F Supp 1223. Thus we hold that the defendant here did have the right to counsel after sentencing when he was with the detectives."

A review of federal case law reveals that no other federal court, including the United States Supreme Court, has ever held that the Sixth Amendment right to counsel extends to a fact situation like the one before us. In *Cahill, supra,* the defendant, on the day after he was convicted of first-degree murder and sentenced, confessed to the murder for which he had been convicted. No *Miranda* warnings were given, and the interrogating officer did not inform the defendant's attorney that the questioning was to take place. Cahill's first conviction was reversed on appeal and, at the retrial, the officer to whom Cahill had confessed testified regarding the confession. Cahill was again convicted, and he subsequently filed a habeas corpus petition, contending that the confession was inadmissible because it was obtained in violation of his Sixth Amendment right to counsel.

The Ninth Circuit majority in *Cahill* held that the Sixth Amendment applied to the post-convic-

tion, post-sentencing interview that was conducted in that case. Dissenting Judge Wallace, however, strongly disagreed with this holding:

"The sixth amendment . . . has absolutely no application to events such as these that take place outside of the courtroom subsequent to sentencing. The majority has extended both the *Massiah* doctrine and the sixth amendment away from their textual and historical roots to a situation in which neither has ever been applied before. As I read its opinion, the majority does so without a single persuasive word of justification for such a radical extension. The sixth amendment simply was not meant to and does not apply to the confrontation in this case; Cahill's constitutional protection derives from the fifth amendment and the concomitant procedural safeguards of *Miranda.*" *Cahill, supra,* p 796.

Judge Wallace concluded "that such a post-trial confrontation between a convicted defendant and the authorities is not a 'critical stage' of the prosecution in which the presence of counsel is necessary to ensure the fairness of the trial itself" and, therefore, "refuse[d] to extend *Massiah* to these facts." *Cahill, supra,* p 799.

I do not attempt to resolve this issue now. I only observe that any constitutional issue with such apparently strong opposing arguments should not be decided on the basis of a single federal decision, with no discussion of competing views, and without the benefit of any briefing or plenary consideration by the courts below.

Similar concerns are raised by my colleagues' discussion of whether defendant waived his right to counsel. Despite the fact that neither the trial court nor the Court of Appeals even considered this issue, my colleagues would hold that defendant did not "intentionally and intelligently" waive his art 1, § 20 right to counsel. The state

does not contend, nor did it attempt to prove in the trial court, that defendant waived his Sixth Amendment right to counsel. Therefore, I seriously question the propriety of deciding the waiver issue on the record before us.

In its final holding, my colleagues' opinion concludes that the rationale of *Harris v New York*, 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), in which the Court held that statements obtained in violation of *Miranda* could be used to impeach the defendant, although they were not admissible as direct evidence of defendant's guilt, does not extend to a Sixth Amendment, art 1, § 20 violation. My colleagues would hold that *Harris* is distinguishable on two grounds:

"First, *Harris* involved Fifth Amendment rights, not art 1, § 20/Sixth Amendment rights as we are faced with here. Secondly, we note that *Harris* is factually inapposite. The *Harris* police misconduct was not nearly as flagrant as is present in this case."

While recognizing that *Harris* "involves a balancing of the incremental deterrence of police illegality against the strong policy against countenancing perjury," my colleagues "think that the violation of the defendant's right to counsel by the detectives was so egregious that it tips the scale against admissibility of the evidence." In light of the "particularly lofty status" that the right to counsel enjoys, my colleagues determine that "[t]o permit law enforcement officers to obtain statements from the defendant in violation of his right to counsel, and to use those statements to attack the defendant and his case, would be to permit an attack on the very foundation of our criminal justice system." Therefore, they "conclude that whether based on a balancing approach or not, any inculpa-

tory statements extracted from a defendant in violation of his Const 1963, art 1, § 20 right to counsel are inadmissible for both substantive and impeachment purposes."

The United States Supreme Court has held, in a variety of factual circumstances, that unconstitutionally obtained evidence is admissible to impeach statements made by the defendant in his trial testimony. Most recently, in *United States v Havens*, 446 US 620; 64 L Ed 2d 559; 100 S Ct 1912 (1980), the Court summarized this line of cases:

"In *Walder v United States* [347 US 62; 74 S Ct 354; 98 L Ed 503 (1954)] the use of evidence obtained in an illegal search and inadmissible in the Government's case in chief was admitted to impeach the direct testimony of the defendant. This Court approved, saying that it would pervert the rule of *Weeks v United States,* 232 US 383 [34 S Ct 341; 58 L Ed 652] (1914), to hold otherwise. Similarly, in *Harris v New York,* 401 US 222 [91 S Ct 643; 28 L Ed 2d 1] (1971), and *Oregon v Hass,* 420 US 714 [95 S Ct 1215; 43 L Ed 2d 570] (1975), statements taken in violation of *Miranda v Arizona,* 384 US 436 [86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974] (1966), and unusable by the prosecution as part of its own case, were held admissible to impeach statements made by the defendant in the course of his direct testimony. *Harris* also made clear that the permitted impeachment by otherwise inadmissible evidence is not limited to collateral matters. 401 US, at 225." *Havens, supra,* 446 US 624.

The rationale of these cases is based on "the notion that the defendant's constitutional shield against having illegally seized evidence used against him" should not be " 'perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.' " *Havens, supra,* p 626 (quoting *Harris, supra).* The Court has also reasoned that

"the deterrent function of the rules excluding unconstitutionally obtained evidence is sufficiently served by denying its use to the government on its direct case." *Havens, supra,* p 626.

As the Court of Appeals noted, at least three federal circuit courts have held that statements obtained in violation of the Sixth Amendment right to counsel can be used for impeachment. *United States v Frank,* 520 F2d 1287, 1291 (CA 2, 1975), *cert den* 423 US 1087 (1976); *United States v Taxe,* 540 F2d 961, 968-969 (CA 9, 1976), *cert den* 429 US 1040 (1977); *United States v McManaman,* 606 F2d 919, 924-925 (CA 10, 1979).

We applied *Harris* in *People v Graham,* 386 Mich 452, 456; 192 NW2d 255 (1971), a case involving a Fifth Amendment violation. Similarly, in *People v Esters,* 417 Mich 34; 331 NW2d 211 (1982), a majority of this Court agreed that the defendant's voluntary statements, obtained in violation of *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981), were admissible, as a matter of federal constitutional law, for impeachment purposes.[2] However, in *People v Reed,* 393 Mich 342, 355; 224 NW2d 867 (1975), *cert den* 422 US 1044, we held that "[i]nvoluntary confessions . . . may never be used, both because the police broke the law but more importantly because an involuntary confession is always of questionable 'trustworthiness.' " See also *Mincey v Arizona,* 437 US 385; 98 S Ct 2408; 57 L Ed 2d 290 (1978).

---

[2] Justice COLEMAN, joined by Chief Justice FITZGERALD, held that the *Harris* rule extended to an *Edwards* violation under the federal constitution. Justices LEVIN, KAVANAGH, and RYAN agreed with this holding. However, Justices KAVANAGH and LEVIN would, on Michigan constitutional grounds, reverse the conviction and join in the conclusions of Justice WILLIAMS' opinion on that issue. Justice WILLIAMS' opinion would hold that the *Harris* rule does not extend, under the federal constitution, to statements obtained in violation of *Edwards.* Justice RILEY did not participate. Thus, the judgment of the Court of Appeals affirming the defendant's conviction was affirmed by an equal division of the Court.

In spite of the consistency with which the *Harris* rule has been applied, both by the federal courts and by this Court, my colleagues find it inapplicable to a Sixth Amendment, art 1, § 20 violation. In so doing, they attempt to distinguish *Harris* on the basis of the nature of the "police misconduct" in this particular case. After finding that the detectives' behavior in this case was more egregious than that in *Harris,* they apparently adopt a per se rule that "any inculpatory statements extracted from a defendant in violation of his Const 1963, art 1, § 20 right to counsel are inadmissible for both substantive and impeachment purposes."

I find this reasoning most unpersuasive. First, I fail to see how the nature of the police conduct *in this case* supports a per se rule against the admissibility of statements obtained in violation of a defendant's right to counsel. Second, under the balancing of interests undertaken in the *Harris* line of cases, the relevant inquiry is not the nature of the police behavior, but rather whether the policy against allowing a defendant to freely perjure himself at trial outweighs the incremental deterrent value against police illegality which a rule precluding the impeachment use of illegally obtained evidence would afford.

My colleagues also reason that "the particular importance of the right to counsel" precludes the use of statements taken in violation of that right "to attack the defendant and his case." This reasoning is faulty in several respects. Since we are concerned here only with the constitutionality of admitting a prior statement to impeach the defendant's contradictory testimony at trial, an extension of *Harris* to this case would not permit the state "to attack the defendant and his case," but would merely aid the truth-finding goal of the trial. Moreover, while it is certainly true that any transgression of the right to counsel should not be

condoned nor tolerated, I fail to see any viable distinction, pertaining to the use of prior inconsistent statements for impeachment, between the Sixth Amendment right to counsel and the other constitutional rights to which the *Harris* rule has been applied. My colleagues rely on *New Jersey v Portash,* 440 US 450; 99 S Ct 1292; 59 L Ed 2d 501 (1979), but that case is clearly distinguishable because it involved an *involuntary* statement.

I would hold that, assuming, but certainly without for a moment conceding, there was a Sixth Amendment, art 1, § 20 violation in this case, defendant's prior statements are nevertheless admissible to impeach his contradictory testimony at trial, provided they were voluntary.

The Court of Appeals affirmed the trial court's determination that defendant's statement was voluntarily made. *Gonyea, supra,* p 183. After having carefully considered defendant's argument that his statement was involuntary, and reviewing the evidence and case law in support thereof, I "do not possess a definite and firm conviction that a mistake was committed by the trial judge in his ruling." *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974). Therefore, I would affirm the Court of Appeals decision on this issue.[3]

BRICKLEY and BOYLE, JJ., concurred with RYAN, J.

[3] In making this determination, I stress that the question whether a statement is voluntarily made is a separate inquiry from whether *Miranda* or defendant's Sixth Amendment right to counsel was violated. While it is certainly true, as defendant contends, that the United States Supreme Court has held that the fact "that a defendant was not advised of his *[Miranda* rights] is a significant factor in considering the voluntariness of statements later made," *Davis v North Carolina,* 384 US 737, 740; 86 S Ct 1761; 16 L Ed 2d 895 (1966), it follows therefrom that noncompliance with *Miranda* does not alone conclusively prove that a statement of confession is involuntary. Similarly, the fact that an incriminating statement was obtained in violation of a defendant's Sixth Amendment right to counsel does not necessarily mean that it was involuntary. Inadmissibility and involuntariness are not synonymous.