PEOPLE v STRIETER

Docket No. 60289. Submitted April 19, 1982, at Lansing.—Decided
September 7, 1982. Leave to appeal applied for.

Margaretha Strieter was charged with embezzlement over $100
and with being an habitual offender. The Bay Circuit Court,
William J. Caprathe, J., ordered the suppression from evidence
of testimony of a police officer regarding statements made by
defendant, and the people appeal by leave granted. The defen-
dant was scheduled to take a polygraph examination. Her
attorney agreed to the test but requested that any statements
made as a result of the test not be used in any way against the
defendant. The prosecutor believed that the defendant's an-
swers to questions asked her would be admissible at trial. The
defendant was unaware of the difference of opinion between the
prosecutor and her attorney. The police officer who conducted a
pre-test interview was aware of the conflict. During this inter-
view the defendant made certain incriminating statements, and
the polygraph examination was not administered. The prose-
cutor sought to have the police officer testify regarding the
statements of the defendant both in his case in chief and in
rebuttal should the defendant testify. The trial court ordered
suppression of the officer's testimony. *Held:*

1. Because the defendant was unaware of the conflict be-
tween the prosecutor and her attorney regarding the use of the
polygraph test answers and any other statements arising from
the examination, it cannot be said that the defendant's waiver
of her right to counsel at the pre-test interview was voluntarily,
intelligently, and knowingly made. The trial court properly
suppressed the officer's testimony from use in the prosecutor's
case in chief.

2. Similarly, because the defendant was deprived of her right
to counsel because of the conflict between her attorney and the

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 590.
[2] 29 Am Jur 2d, Evidence § 587.
[3, 4] 29 Am Jur 2d, Evidence § 529.
[4] 29 Am Jur 2d, Evidence §§ 545, 555-557.

prosecutor, her statements to the officer were properly held to be involuntary and not admissible for impeachment purposes.

Affirmed.

M. J. KELLY, P.J., dissented. He would hold that under the facts of this case the defendant's statements were not sufficiently involuntary to exclude their use for impeachment. He would allow the officer's testimony for that purpose.

## OPINION OF THE COURT

1. APPEAL — VOLUNTARINESS OF STATEMENT.

The Court of Appeals, when reviewing the finding of a trial court concerning the voluntariness of a witness's statement, must examine the whole record and make an independent determination of the issue of the voluntariness; the trial court's decision to suppress statements will be affirmed unless the Court of Appeals is left with a definite and firm belief that a mistake has been made.

2. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS OF STATEMENT.

The voluntariness of a defendant's confession is a question of fact which is to be decided by viewing the totality of the circumstances surrounding the confession.

3. CRIMINAL LAW — EVIDENCE — INVOLUNTARY STATEMENTS.

Any use in a criminal trial against a defendant of his involuntary statement is a denial of due process of law even though there is ample evidence aside from the statement to support a conviction.

## DISSENT BY M. J. KELLY, P.J.

4. CRIMINAL LAW — VOLUNTARINESS OF STATEMENT — IMPEACHMENT.

*A statement made by a defendant to an interrogating officer in an interview conducted prior to a scheduled polygraph examination, which was then not given because of the statement, while not admissible in the prosecution's case in chief because the defendant was not informed of a conflict between her attorney, who was not present at the interview, and the prosecutor regarding the use to which any statements made by defendant could be put was admissible for purposes of impeachment where the defendant had been told by her attorney that she could cancel the questioning at any time, had been given Miranda warnings, did not request her attorney and was apparently able to understand and assert her rights.*

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Neil P. Wackerly,* Assistant Prosecuting Attorney, for the people.

*Daniel R. Connell,* for defendant on appeal.

Before: M. J. KELLY, P.J., and CYNAR and G. R. COOK,* JJ.

G. R. COOK, J. The people appeal by leave granted, GCR 1963, 806.2, the trial court's suppression of statements made by defendant Margaretha Strieter. Strieter is charged with embezzlement over $100, MCL 750.174; MSA 28.371, and with being an habitual offender, MCL 769.12; MSA 28.1084.

Sometime in January, 1981, the prosecutor and defense counsel agreed that defendant would take a polygraph examination. Defense counsel believed that the prosecutor would drop the charges against defendant if she passed the examination, but the prosecutor denies that this was any part of the agreement. On January 26, 1981, the prosecutor sent a letter to defense counsel informing him that the polygraph examination was scheduled for February 12, 1981, at 9 a.m. at the Bay City, Michigan, state police post. Enclosed with the letter was a waiver form which stated that anything defendant said could be used against her. It also stated that her attorney would not be permitted to attend but that she could stop the questioning at any time. The waiver was to be signed by both defendant and her attorney. On the same date, the prosecutor sent a letter to the Bay City Police Detective Bureau informing them of the time and date of the polygraph examination.

Defense counsel conferred with defendant, advis-

* Circuit judge, sitting on the Court of Appeals by assignment.

ing her about the polygraph examination. He also sent her a letter advising her to read over the prosecutor's waiver form and sign it. He informed her that he would not be present during the examination but told her to stop the test if she felt pressure. On February 2, 1981, Strieter signed the waiver form and sent it back to defense counsel. Defense counsel also signed the waiver but added the following addendum:

"Note: I expect our agreement above to be for the purposes of a polygraph only, and that the questions and answers are not to be used against her in a court of law, or in any other way used against her."

Upon receipt of the waiver form containing defense counsel's addendum, the prosecutor sent defense counsel a letter, the signed waiver form, and an unsigned waiver form. The letter informed defense counsel that the prosecutor believed that defendant's answers to the questions asked during the examination were admissible at trial. The letter concluded:

"I am enclosing another copy of a request for polygraph examination which you and Mrs. Strieter can sign if you so desire. I do not wish to mislead you in any way concerning the questions and answers of the polygraph examination. Incriminating statements made by Mrs. Strieter will be used against her in a court of law. It was my understanding that it was your position that Mrs. Strieter is innocent of these charges and would have nothing to fear from the polygraph examination. If this is not the case, please inform me immediately as we will have to cancel this examination. Otherwise, I would expect that the request be signed and delivered to our office or to the Michigan State Police Post prior to February 12, 1981, so that the examination may be run.

The new waiver was never signed or returned and defense counsel testified he was unable to contact the prosecutor.

On February 12, 1981, defendant was taken to the state police post for the polygraph examination. While defense counsel had failed to inform defendant of the rejected waiver transaction, State Police Detective Lowthian, who was scheduled to conduct the examination, was aware of the waiver transaction between defense counsel and the prosecutor. Prior to commencing the "pre-test interview",[1] Lowthian informed defendant of her *Miranda*[2] rights and had her execute a waiver which explained her *Miranda* rights and special warnings pertaining to polygraph examinations. Officer Lowthian testified that during the pre-test interview, which lasted for 1-1/4 hours, defendant made certain incriminating admissions. After the pre-test interview, defendant was informed that she would not be given the polygraph test because she had admitted her guilt during the pre-test interview. Defendant was never given a polygraph examination. Upon obtaining access to a telephone, defendant contacted her attorney and informed him of what transpired.

On March 18, 1981, a motion to suppress Officer Lowthian's testimony was brought before the trial court. After a *Walker*[3] hearing, the trial court suppressed Lowthian's testimony, finding that defendant had been denied due process and her right

[1] The polygraph examination consisted of three phases. First, the examinee would be asked questions during the pre-test interview. The examinee would then take the polygraph examination. Finally, the examinee would be asked additional questions in the post-test interview.

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

[3] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

to counsel. The court held that defense counsel's addendum to the waiver negated any agreement concerning the polygraph test. The court also found that it was the prosecutor's duty to cancel the polygraph test. The trial judge declined to rule at that time on whether Lowthian's testimony could be used to impeach defendant if she testified at trial.

On September 15, 1981, after a jury was selected but before it was sworn, the prosecutor informed the trial court that he intended to use Lowthian's testimony to impeach defendant should she testify contrary to her alleged prior statements. Defense counsel moved to suppress the use of Lowthian's testimony for impeachment purposes. The trial court granted defendant's motion. The prospective jury was dismissed and the prosecutor filed this appeal.

On appeal, the prosecutor raises two issues. Initially, he argues that the trial court erred when it suppressed the use of Lowthian's testimony in his case in chief.

## I

When reviewing the findings of a trial court made during a *Walker* hearing, we are required to examine the whole record and make an independent determination of the ultimate issue of the voluntariness of a defendant's statement. *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972). A trial court's decision to suppress statements will be affirmed unless we are left with a definite and firm belief that a mistake has been made. *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974).

The voluntariness of a defendant's confession is

a question of fact which is decided by viewing the totality of the circumstances surrounding the confession. *People v Crawford,* 89 Mich App 30, 32; 279 NW2d 560 (1979), *lv den* 409 Mich 914 (1980). Defendant's waiver must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances. *Edwards v Arizona,* 451 US 477, 482-483; 101 S Ct 1880; 68 L Ed 2d 378 (1981).

In this case, we are not left with a definite and firm conviction that the trial judge erred when he suppressed Lowthian's testimony concerning defendant's statements. At the time the interrogation occurred defendant believed that her attorney approved of the procedure and that she would be allowed to take a polygraph examination. The police, on the other hand, were aware of the conflict between the prosecutor and defense counsel. They knew that defendant's attorney objected to the use of any interrogations connected with the polygraph exam and to the use at defendant's trial of any statements made by her. They failed to inform defendant of this conflict, allowing her to think that her attorney still approved of the procedure. Furthermore, they failed to inform defense counsel that the polygraph examination would be conducted as scheduled. While defense counsel should have informed his client not to talk to the police, under the facts of this case we are unable to say that defendant's waiver of her right to counsel was voluntarily, intelligently, and knowingly made.

## II

The people also appeal the trial court's ruling

that Lowthian's testimony could not be used to impeach defendant if she took the stand and testified contrary to the statements made during the pre-test interview. According to the trial court, because the polygraph addendum was not in effect as defendant's attorney believed it to be, defendant was deprived of her right to counsel and her waiver was not proper. Therefore, the trial court refused to allow the prosecutor to impeach defendant with her prior statements.

In *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), the Supreme Court held that otherwise inadmissible evidence may be used to impeach the testimony of a defendant. The Court stated:

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements." 401 US 222, 226.

However, it must be noted that the defendant in *Harris* made no claim that his statements made to the police were coerced or involuntary. 401 US 222, 224.

In *Oregon v Hass,* 420 US 714; 95 S Ct 1215; 43 L Ed 2d 570 (1975), the Court reaffirmed its position in *Harris,* holding that the shield provided by *Miranda* cannot be "perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances". 420 US 714, 722; *People v Graham,* 386 Mich 452, 457; 192 NW2d 255 (1971).

However, any criminal trial use against a defendant of his involuntary statement is a denial of

due process of law "even though there is ample evidence aside from the confession to support the conviction". *Jackson v Denno,* 378 US 368, 376; 84 S Ct 1774; 12 L Ed 2d 908 (1964). In *Mincey v Arizona,* 437 US 385; 98 S Ct 2408; 57 L Ed 2d 290 (1978), the Court held that because the defendant's statements were not the product of a rational intellect and a free will, his conviction could not stand.

In the instant case, the trial court held that defendant did not knowingly waive her right to remain silent because she was deprived of her right to counsel through a misunderstanding between her attorney and the assistant prosecutor; the court therefore held that her statements were involuntary as a result of that deprival. She has become the victim of the misunderstanding between the two attorneys involved.

In light of the foregoing, the trial court's suppression of defendant's statements should be affirmed.

CYNAR, J., concurred.

M. J. KELLY, P.J. *(dissenting).* While I agree with the majority's disposition of defendant's first issue, I must dissent to its resolution of whether defendant's statements may be used to impeach her if she testifies contrary to those statements at trial.

In *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), the Supreme Court addressed the issue of whether defendant's otherwise inadmissible statement could be used during trial to impeach him where he took the stand and testified contrary to his prior statement. During his trial for selling heroin, defendant testified that he never sold anything but baking powder to an undercover police officer. On cross-examination, the prosecutor

was allowed to impeach defendant by using statements made by him which were inadmissible because they were taken in violation of *Miranda.* Noting that some language in *Miranda* could be used to support the proposition that such statements could not be used to impeach defendant, the Court refused to give this language controlling effect. *Id.,* 224. The Court reasoned that, although the statements were obtained in violation of defendant's constitutional rights, this fact did not allow the defendant to resort to perjurious testimony in reliance upon the government's inability to challenge his credibility. *Id.,* 224. The Court held that while defendant's statements were inadmissible in the prosecution's case in chief, they were admissible to impeach defendant's testimony which was contrary to the inculpatory statements. *Id.,* 225.

Similar results were reached in *Oregon v Hass,* 420 US 714; 95 S Ct 1215; 43 L Ed 2d 570 (1975), *People v Graham,* 386 Mich 452; 192 NW2d 255 (1971), and *People v Dyson,* 106 Mich App 90; 307 NW2d 739 (1981).

While the majority recognizes the holdings of *Harris* and *Hass,* it cites *Mincey v Arizona,* 437 US 385; 98 S Ct 2408; 57 L Ed 2d 290 (1978), for the proposition that defendant's statement was involuntary and therefore inadmissible for any reason. I read *Mincey* differently and am unable to agree. In *Mincey,* defendant's statement was taken while he was in the intensive care unit of a hospital. He was in serious pain and had various tubes inserted into his body. On a number of occasions, defendant requested that the questioning be stopped and he requested an attorney twice. Despite defendant's weakened condition, and ignoring his request, the police continued to question him until they had his confession. The United

States Supreme Court found that Mincey's statements could not be used for any purpose during his trial.

In this case, defendant was not subjected to any type of coercive interrogation as was the defendant in *Mincey.* While she was unaware of her attorney's proposed condition for the polygraph test, she had been instructed by her attorney that she could cancel the interrogation at any time. Furthermore, she was given her *Miranda* warnings prior to the questioning. There was no evidence that defendant was unable to understand or assert her rights or that she requested an attorney. At no time during the questioning did she request that the interrogation be terminated. I do not find the facts in this case similar to those in *Mincey,* and I am not convinced that defendant's statement was intellectually involuntary. It must be suppressed for violation of a prophylactic rule, but that does not mean its use for impeachment purposes is prohibited or violates any perceived public policy. The question of her credibility if she takes the stand and testifies contrary to her statements to the interrogating officer should be weighed by the trier of fact.

I believe the trial court erred in refusing to permit the prosecution to use the defendant's admissions to impeach her because the interview was in violation of her constitutional rights. While this was a valid reason for excluding her statements from the prosecutor's case-in-chief, it would not be sufficient to exclude the use of the statements for impeachment purposes. I would find the trial court's ruling that defendant's statements were inadmissible for impeachment purposes was error.