*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEVIN LIONEL THOMPSON, JR,

        Defendant-Appellant.

UNPUBLISHED
May 6, 2021

No. 344834
Genesee Circuit Court
LC No. 16-039869-FC

Before: M. J. KELLY, P.J., and RONAYNE KRAUSE and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, conspiracy to commit armed robbery, MCL 750.157a and MCL 750.529, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment without parole for the first-degree murder conviction, and concurrent prison terms of 225 months to 40 years each for the armed robbery and conspiracy convictions, and 24 to 60 months for CCW conviction, which were to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. FACTS AND PROCEEDINGS

Defendant's convictions arise from the April 21, 2015 robbery and homicide of David Fuller on West Genesee Street in Flint. A codefendant, Ah'Quan Lay, and the victim both worked as delivery drivers for Cottage Inn Pizza on Miller Road in Flint. The victim sold his vehicle to Lay, but Lay had not fully paid the purchase price before the victim's death. Lay's employer terminated him because of unreliability. Defendant, who resided in Ohio, came with his mother to visit family and friends in Flint in April 2015, during which defendant became acquainted with Lay.

At trial, the prosecution presented the theory that Lay conceived a plan to rob the victim, recruited defendant to participate in the offense, and then, during the offense, defendant shot the victim using a gun supplied by Lay. The prosecution presented evidence that Lay called Cottage Inn using a cell phone application that concealed the caller's number. He ordered delivery of

pizzas to 1813 West Genesee, an abandoned and vacant house, and requested delivery by the "white boy" who closed the store, which was a description that fit only the victim. When the victim arrived at the abandoned house, defendant approached his car with a gun, shot the victim multiple times, and then ran away. After the offense, Lay told Preston Walker, another former Cottage Inn employee, that he planned the robbery and that defendant shot the victim. Walker disclosed this information to his parents, who reported the information to the police.

After defendant learned that he had been charged in relation to the robbery and homicide, his family retained an attorney to represent him, and defendant turned himself in to the police. Defense counsel and the assistant prosecutor orally agreed that defendant would submit to a polygraph examination and, if he "passed," the prosecutor would dismiss the charges. Defense counsel planned to be present during the administration of the polygraph examination. The examination was scheduled to be held at the courthouse at 7:00 p.m. on July 15, 2015, after the courthouse was closed to the public. Another assistant prosecutor agreed to admit defense counsel into the courthouse. Defense counsel stated that he and the prosecutor also agreed that defendant would not be questioned after the examination, and he similarly advised defendant not to answer any other questions after the examination.

Agent David Dwyre administered the polygraph examination earlier in the day than scheduled, without notifying defense counsel. Before and after the examination, Agent Dwyre advised defendant that he had the right to stop the questioning at any time and the right to contact his attorney. Agent Dwyre offered his phone to defendant to call his attorney if he wanted. Agent Dwyre interviewed defendant after the polygraph examination concluded. Defendant initially stated that he shot the victim by accident when the victim tried to grab the gun. He then recanted this admission and stated that he merely rode in Lay's car without knowing that Lay had planned to rob the victim. In a third statement, defendant reiterated his admission that he took part in the robbery, but accidentally shot the victim.

Defendant moved to suppress his statements on the ground that Agent Dwyre violated the polygraph agreement, which negated defendant's waiver of rights. The trial court denied the motion. Defendant and Lay were tried jointly, before separate juries.[1] Over defendant's objection, the trial court admitted Walker's testimony regarding Lay's statements about defendant's involvement in the homicide. The trial court denied defendant's motion to permit testimony from a proposed alibi witness, Terrance Boone, because defendant failed to give timely notice of the alibi testimony. The jury convicted defendant of felony murder, armed robbery, conspiracy to commit armed robbery, CCW, and felony-firearm.

---

[1] Codefendant Lay was convicted of first-degree felony murder, armed robbery, conspiracy to commit armed robbery, CCW, felon in possession of a firearm, felon in possession of ammunition, and felony-firearm. This Court affirmed his convictions in *People v Lay*, unpublished per curiam opinion of the Michigan Court of Appeals, issued November 26, 2019 (Docket No. 345202), lv den ___ Mich ___ (2020) (Docket No. 160841).

Defendant moved for a new trial and requested a *Ginther*[2] hearing. He argued that defense counsel provided ineffective assistance by failing to procure a written polygraph agreement and failing to testify regarding the terms of the polygraph agreement at the evidentiary hearing on the motion to suppress. After conducting a *Ginther* hearing, the trial court denied defendant's motion for a new trial.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that the prosecutor and Agent Dwyre violated an oral agreement that Agent Dwyre would not question defendant after the polygraph examination. Defendant argues that defense counsel was ineffective for failing to establish the terms of the polygraph agreement, which in turn caused the trial court to deny defendant's motion to suppress his incriminating statements made in the post-polygraph interview.

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. To establish ineffective assistance of counsel, a defendant first must demonstrate that trial counsel's performance fell below an objective standard of reasonableness. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *Id.* "[T]he defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Id*. at 290.

The crux of defendant's ineffective-assistance claim is that trial counsel's failure to establish or present competent evidence of the terms of the polygraph agreement, through either a written document or sworn testimony, prejudiced defendant by leaving him unable to prove that the prosecutor violated the agreement, and thereby caused the trial court to deny his motion to suppress his incriminating statements made in the post-polygraph interview. We disagree because, considering the ground for the trial court's decision on the suppression motion, there is no reasonable probability that the evidence that defendant claims should have been compiled or presented would have led to a different outcome of the motion. Accordingly, defendant has not established that he was prejudiced by counsel's alleged deficiencies.

The Sixth Amendment right to counsel attaches at the initiation of adversary judicial criminal proceedings. *Moore v Illinois*, 434 US 220, 226-227; 98 S Ct 458; 54 L Ed 2d 424 (1977); *People v Hickman*, 470 Mich 602, 607; 684 NW2d 267 (2004). "Once a suspect invokes his right to remain silent or requests counsel, police questioning must cease unless the suspect affirmatively reinitiates contact." *People v Tanner*, 496 Mich 199, 208; 853 NW2d 653 (2014), citing *Miranda v Arizona*, 384 US 436, 473-474; 86 S Ct 1602; 16 L Ed 2d 694 (1966). In *Tanner*, our Supreme Court noted the "additional safeguards" created by the United States Supreme Court in *Edwards v Arizona*, 451 US 477, 484-485; 101 S Ct 1880; 68 L Ed 2d 378 (1981). Under those safeguards, "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

initiated custodial interrogation even if he has been advised of his rights." *Tanner*, 496 Mich at 208, quoting *Edwards*, 451 US at 484. As observed in *Tanner*, when an accused has "expressed his desire to deal with the police only through counsel, [an accused] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Tanner*, 496 Mich at 208-209, quoting *Edwards*, 451 US at 484. The Court in *Tanner* further stated:

> However, when a suspect has been afforded *Miranda* warnings and affirmatively waives his *Miranda* rights, subsequent incriminating statements may be used against him. *Miranda*, 384 US at 444, 479. A suspect's waiver of his *Miranda* rights must be made "voluntarily, knowingly, and intelligently." *Id*. at 444. The United States Supreme Court has articulated a two-part inquiry to determine whether a waiver is valid:
>
>> First, the relinquishment of the right must have been "voluntary," in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. [*Tanner*, 496 Mich at 209, quoting *Moran v Burbine*, 475 US 412, 421; 106 S Ct 1135; 89 L Ed 2d 410 (1986).]

Whether a defendant waived his Sixth Amendment right to counsel by initiating communications with the police depends upon the circumstances of the case, including the defendant's background, experience, and conduct. *People v McElhaney*, 215 Mich App 269, 274; 545 NW2d 18 (1996). The prosecution has the burden of establishing a valid waiver by a preponderance of the evidence. *People v Daoud*, 462 Mich 621, 634; 614 NW2d 152 (2000).

When deciding both defendant's motion to suppress and motion for a new trial, the trial court found that defendant's post-polygraph examination statements were admissible because defendant knowingly and voluntarily waived his rights, in disregard of his trial counsel's advice. In its opinion and order denying defendant's motion for a new trial, the trial court found that, regardless of the terms of the polygraph agreement, suppression of defendant's statements was not warranted because the evidence showed that Agent Dwyre reviewed defendant's rights with him in "painstaking detail," defendant acknowledged his understanding of his right to an attorney at any time, defendant signed two written waivers, and defendant knowingly and intentionally waived his right to an attorney and proceeded with the questioning. The trial court explained that it was immaterial whether counsel was present outside the room when the exam took place because defendant understood that counsel would not be present in the room during questioning and defendant never asked for counsel. The trial court also noted that defense counsel had advised defendant not to make any statements other than answering the polygraph questions, but defendant chose not to follow that advice after waiving his right to counsel.

In reviewing a trial court's decision on a motion to suppress, we review the trial court's factual findings for clear error. *People v Roberts*, 292 Mich App 492, 502; 808 NW2d 290 (2011). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). Defendant does not argue that the trial court's findings were erroneous. Indeed, he does not substantively challenge the trial court's suppression ruling. Although he cites principles of law concerning law enforcement's violation of a defendant's Sixth Amendment rights by resuming interrogation after the defendant has asserted his right to counsel, he does not state that he did not initiate the post-polygraph interrogation or that Agent Dwyre continued to question him in violation of his right to counsel. His argument is instead premised on defense counsel's alleged deficiencies that prejudiced his ability to establish a violation of the polygraph agreement. The pertinent question is whether any deviation from the polygraph agreement negated defendant's later waiver of rights.

In *People v Strieter*, 119 Mich App 332; 326 NW2d 502 (1982), the prosecutor and defense attorney agreed that a polygraph examination would be held at a scheduled time. The agreement also stated that the defense attorney would not be permitted to attend, but the defendant could stop the questioning at any time. *Id.* at 334. The defendant and her attorney signed the waiver form, but the attorney wrote this addendum on the form:

> NOTE: I expect our agreement above to be for the purposes of a polygraph only, and that the questions and answers are not to be used against her in a court of law, or in any other way used against her. [*Id*. at 335.]

The prosecutor responded by sending defense counsel a signed waiver form, an unsigned waiver form, and a letter that stated, in pertinent part:

> I am enclosing another copy of a request for polygraph examination which you and Mrs. Strieter can sign if you so desire. I do not wish to mislead you in any way concerning the questions and answers of the polygraph examination. Incriminating statements made by Mrs. Strieter will be used against her in a court of law. It was my understanding that it was your position that Mrs. Strieter is innocent of these charges and would have nothing to fear from the polygraph examination. If this is not the case, please inform me immediately as we will have to cancel this examination. Otherwise, I would expect that the request be signed and delivered to our office or to the Michigan State Police Post prior to February 12, 1981, so that the examination may be run. [*Id*.]

The defendant and her attorney did not sign or return the second waiver form. *Id*. at 336. The following events ensued:

> On February 12, 1981, defendant was taken to the state police post for the polygraph examination. While defense counsel had failed to inform defendant of the rejected waiver transaction, State Police Detective Lowthian, who was scheduled to conduct the examination, was aware of the waiver transaction between defense counsel and the prosecutor. Prior to commencing the "pre-test interview," Lowthian informed defendant of her *Miranda* rights and had her execute a waiver

which explained her *Miranda* rights and special warnings pertaining to polygraph examinations. Officer Lowthian testified that during the pre-test interview, which lasted for 1¼ hours, defendant made certain incriminating admissions. After the pre-test interview, defendant was informed that she would not be given the polygraph test because she had admitted her guilt during the pre-test interview. Defendant was never given a polygraph examination. Upon obtaining access to a telephone, defendant contacted her attorney and informed him of what transpired. [*Id*. at 336.]

The trial court granted the defendant's motion to suppress her statements on the ground that defense counsel's addendum "negated any agreement concerning the polygraph test." *Id*. at 337. This Court affirmed that decision, stating:

In this case, we are not left with a definite and firm conviction that the trial judge erred when he suppressed Lowthian's testimony concerning defendant's statements. At the time the interrogation occurred defendant believed that her attorney approved of the procedure and that she would be allowed to take a polygraph examination. The police, on the other hand, were aware of the conflict between the prosecutor and defense counsel. They knew that defendant's attorney objected to the use of any interrogations connected with the polygraph exam and to the use at defendant's trial of any statements made by her. They failed to inform defendant of this conflict, allowing her to think that her attorney still approved of the procedure. Furthermore, they failed to inform defense counsel that the polygraph examination would be conducted as scheduled. While defense counsel should have informed his client not to talk to the police, under the facts of this case we are unable to say that defendant's waiver of her right to counsel was voluntarily, intelligently and knowingly made. [*Id*. at 338.]

This case is distinguishable from *Strieter* in several aspects. Unlike this case, the defense attorney in *Strieter* had not advised his client against speaking to the officer, except for answering questions during the polygraph examination. The attorney in *Strieter* effectively disapproved of a polygraph examination under conditions to which the prosecutor did not agree. In contrast, defense counsel in this case instructed defendant not to consent to an interview after the examination. Defendant disregarded these instructions against counsel's advice, even after Agent Dwyre specifically informed him that he could call his attorney and Agent Dwyre offered defendant the use his cell phone to do so. *Strieter* does not stand for the proposition that a prosecutor's deviation from a polygraph agreement negates a defendant's subsequent knowing and voluntary waiver of his rights.

In *People v Leonard*, 421 Mich 207, 213; 364 NW2d 625 (1984), the defendant and the prosecutor signed a stipulated agreement excluding from evidence the defendant's submission to a polygraph examination, the results of the examination, and anyone's interpretation of the examination. After the defendant was detached from the polygraph machine, he made inculpatory statements in response to the officer's questions. *Id*. at 214-215. Our Supreme Court agreed with this Court's conclusion that the defendant's statements after the polygraph examination should not have been admitted, but premised its agreement "on the ground that the defendant did not knowingly waive his right to remain silent in view of the stipulation" between the parties that "the

results of the polygraph examination and opinions drawn therefrom would not be admissible in evidence." *Id*. at 209-210. Of the seven concurring justices, Chief Justice WILLIAMS wrote a separate concurrence in which he stated that he held that the prosecution failed to meet its constitutional burden "of proving that the defendant knowingly, intelligently and intentionally relinquished his right to counsel for his defense." *Id*. at 212. Chief Justice WILLIAMS explained that the state must prove that the defendant intentionally and intelligently waived his right to assistance of counsel by showing that "he knows what he is doing and his choice is made with eyes open" after being "apprised of the nature of the protection which an attorney can provide at this stage of the proceeding." *Id*. at 224 Chief Justice WILLIAMS considered the particular facts of the case and concluded:

> Plaintiff, however, introduced no evidence that defendant made an intentional and intelligent relinquishment of his right to counsel for his defense beyond the "yeah" to the question of whether he understood his *Miranda* rights and the "yeap" to the question of whether he relinquished those rights. Plaintiff made no showing whatsoever as to whether defendant believed his rights under the stipulation and court order meant that whatever he said would be suppressed from introduction into evidence, as defendant claimed, or that defendant believed that only what he said while attached to the polygraph machine would be excluded from evidence, as plaintiff claimed. [*Id*. at 225.]

Chief Justice WILLIAMS remarked that the prosecutor failed to demonstrate that the defendant understood that the stipulation no longer applied after the polygraph examination ended. It was therefore not possible "to know whether defendant *intelligently* relinquished his right to counsel for his defense." *Id*. The facts and circumstances of *Leonard* are plainly distinguishable from the instant case because Agent Dwyre explicitly reviewed defendant's rights in detail with him multiple times, first through discussion about each of defendant's rights, next by having him read his rights and answers to questions about understanding his rights, then Agent Dwyre read defendant the *Miranda* warning, whereupon defendant knowingly and voluntarily waived his rights and signed his waiver. Agent Dwyre also had defendant review and sign a permission form which again advised defendant of his rights. Agent Dwyre also advised defendant that he could stop at any time.

In sum, regardless of the terms of the polygraph agreement, the record reflects that defendant was fully aware that counsel would not be present during questioning, defendant was advised of his rights and understood that he could request counsel or contact his attorney at any time during questioning but never did so, and that counsel had instructed defendant not to answer any questions after the polygraph examination but defendant disregarded counsel's instructions and knowingly and voluntarily waived his rights and proceeded to respond to further questioning. Under these circumstances, defendant has not established that defense counsel's failure to obtain a written agreement or provide sworn testimony of the agreement's alleged terms affected the

outcome of the proceedings. Accordingly, defendant has failed to establish that his trial counsel provided him ineffective assistance.[3]

## III. ALIBI TESTIMONY

Defendant argues that the trial court erred by excluding Terrance Boone's proposed alibi testimony for failure to timely provide notice of the proposed testimony. Alternatively, he argues that defense counsel provided ineffective assistance by failing to provide timely notice of the testimony. We disagree.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013) (quotation marks and citation omitted). "We review de novo the trial court's rulings on preliminary questions of law regarding the admissibility of evidence, such as the application of a statute or rule of evidence." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012) (citation omitted).

MCL 768.20 requires a defendant to provide prior notice of intent to offer alibi testimony. The statute provides in pertinent part:

> (1) If a defendant in a felony case proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case, *or at such other time as the court directs*, file and serve upon the prosecuting attorney a notice in writing of his intention to claim that defense. The notice shall contain, as particularly as is known to the defendant or the defendant's attorney, the names of witnesses to be called in behalf of the defendant to establish that defense. The defendant's notice shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense.

\* \* \*

---

[3] In the dissent, matters about defendant not having his defense counsel's cell phone number and sleep deprivation are discussed. We note we have both read the transcript of and listened to the recorded interview between defendant and the polygraph examiner as well as reviewed the rest of the record from the trial court. We are unable to locate any evidence of record which indicates defendant did not have his attorney's phone number. Likewise, except for a comment by defendant, memorialized at page 27 of the transcript of the interview where defendant stated his sleep was "Not so good" we are unable to identify any other evidence of record related to sleep deprivation and we observe that after listening to and reading the transcript of the interview, it appears defendant is responsive and engaged during the entire process.

(3) Both the defendant and the prosecuting attorney shall be under a continuing duty to disclose promptly the names of additional witnesses which come to the attention of either party subsequent to filing their respective notices as provided in this section. *Upon motion with notice to the other party and upon a showing by the moving party that the name of an additional witness was not available when the notice required by subsections (1) or (2) was filed and could not have been available by the exercise of due diligence, the additional witness may be called by the moving party to testify as a witness for the purpose of establishing or rebutting an alibi defense.* [Emphasis added.]

MCL 768.21(1) provides:

If the defendant fails to file and serve the written notice prescribed in section 20 or 20a, *the court shall exclude evidence offered by the defendant for the purpose of establishing an alibi* or the insanity of the defendant. If the notice given by the defendant does not state, as particularly as is known to the defendant or the defendant's attorney, the name of a witness to be called in behalf of the defendant to establish a defense specified in section 20 or 20a, the court shall exclude the testimony of a witness which is offered by the defendant for the purpose of establishing that defense. [Emphasis added.]

In *People v Travis*, 443 Mich 668, 679; 505 NW2d 563 (1993), our Supreme Court held that the language "or at such other time as the court may direct" in MCL 768.20 "preserves the trial court's discretion to fix the timeliness of notice in view of the circumstances." The Court observed that MCL 768.21(1) states that "the court *shall* exclude evidence . . . ," which suggested that "the sanction of exclusion" was mandatory, and acknowledged that caselaw had both treated the exclusion as mandatory and held that a trial court has discretion to admit such evidence when timely notice has not been provided. *Travis*, 443 Mich at 678-679. The Court "agree[d] with those panels that have concluded that the language 'or at such other time as the court may direct' preserves the trial court's discretion to fix the timeliness of notice in view of the circumstances." *Id*. at 679.

Plaintiff argues that the statutory scheme allows the trial court discretion only in the circumstances described in MCL 768.20(3), namely, when the alibi witness was not known to the party. However, *Travis* does not support such interpretation. In *Travis*, our Supreme Court indicated that the trial court's discretion is derived from MCL 768.20(1), not the limited circumstances prescribed in MCL 768.20(3).

In this case, after observing that it was undisputed that timely notice of Boone's proposed alibi testimony had not been provided, the trial court concluded that the testimony was "prohibited" and "[f]orbidden." We agree with defendant that the trial court's statement suggests that it erroneously believed that it had no discretion to allow the testimony because the term "shall" foreclosed any discretion. The trial court did not indicate whether it would have been inclined to allow the testimony despite the lack of timely notice. Nonetheless, "a preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999) (quotation marks omitted). In view

of defendant's own inculpatory admissions to Agent Dwyre, we cannot conclude that it is more probable than not that the claimed error was outcome-determinative. Significantly, although defendant gave different versions of the events in his statements to Agent Dwyre regarding his participation in the robbery and homicide, his statements were consistent in admitting that he was present with Lay at the time of the robbery. Accordingly, defendant has failed to establish that more probable than not the exclusion of Boone's proposed testimony affected the outcome. Therefore, any error was harmless.

Defendant also argues that defense counsel's failure to provide timely notice of the alibi testimony constituted ineffective assistance of counsel. Defendant did not raise this issue in his motion for a new trial, and thus the issue was not addressed at the *Ginther* hearing. This Court also denied defendant's motion to remand respecting this issue.[4] In the absence of a *Ginther* hearing, this Court's review "is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). It is not apparent from the record when defendant advised defense counsel that Boone was a potential alibi witness, and defendant has not submitted an affidavit or other offer of proof in support of this claim. Further, there is no record evidence of how Boone would have testified if defendant had been permitted to call him as a witness. Accordingly, defendant has not established factual support for his claim that defense counsel performed deficiently by failing to timely file a notice of alibi respecting Boone, nor has he demonstrated that he was prejudiced by Boone's failure to testify.

## IV. STATEMENT AGAINST PENAL INTEREST HEARSAY EXCEPTION

Defendant argues that the trial court erred by permitting Preston Walker to testify regarding Lay's statements regarding Lay's and defendant's involvement in the robbery and homicide. Defendant argues that Lay's statements were inadmissible hearsay and violated his constitutional right of confrontation. We disagree.

The trial court found that Lay's statements were admissible under MRE 804(b)(3) and did not violate the Confrontation Clause. We review the trial court's decision to allow the testimony for an abuse of discretion, but review any preliminary questions of law de novo. *Jackson*, 498 Mich at 257; *King*, 297 Mich App at 472.

Initially, the admission of Lay's statements to Walker did not violate defendant's constitutional right of confrontation because Lay's statements were not testimonial. "The Confrontation Clause of the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .' " *People v Fontenot*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 350391); slip op at 2, lv pending, quoting US Const, Am VI. In *Crawford v Washington*, 541 US 36, 50-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004), "the United States Supreme Court held that, under the Confrontation Clause, out-of-court testimonial statements are inadmissible against a criminal defendant unless the declarant is unavailable and the defendant has had a previous opportunity to cross-examine the declarant." *Fontenot*, ___ Mich App at ___; slip op at 2. An

---

[4] *People v Thompson*, unpublished order of the Michigan Court of Appeals, entered April 1, 2020 (Docket No. 344834).

accomplice's statement admitted under MRE 804(b)(3) does not violate the Confrontation Clause if it is a nontestimonial statement. *People v Taylor*, 482 Mich 368, 374-375; 759 NW2d 361 (2008). In *Taylor*, our Supreme Court held that a codefendant's out-of-court inculpatory statements to an acquaintance that implicated his codefendant were nontestimonial and, therefore, did not implicate the Confrontation Clause and were solely governed by and admissible under MRE 804(b)(3). *Id*. at 378. The Court reiterated the applicable standard for admissibility under MRE 804(b)(3) as follows:

> [W]here, as here, the declarant's inculpation of an accomplice is made in the context of a narrative of events, at the declarant's initiative without any prompting or inquiry, that as a whole is clearly against the declarant's penal interest and as such is reliable, the whole statement—including portions that inculpate another—is admissible as substantive evidence at trial pursuant to MRE 804(b)(3). [*Id*. at 379 (citation omitted).]

"Pretrial statements are testimonial if the declarant would reasonably expect that the statement will be used in a prosecutorial manner and if they were made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]' " *Fontenot*, ___ Mich App at ___; slip op at 3, quoting *Crawford*, 541 US at 51-52. In *People v Nunley*, 491 Mich 686, 706; 821 NW2d 642 (2012), our Supreme Court noted that "the core class of testimonial statements" are "extrajudicial statements" such as "affidavits, depositions, prior testimony and confessions . . . ."

In this case, Lay described to an acquaintance in an informal and casual conversation his and defendant's involvement in the incident. His statements to Walker were not the product of police questioning or even made in an investigative context. Therefore, they did not qualify as "testimonial" in nature. Accordingly, the admission of Lay's statements did not violate the Confrontation Clause and were governed by MRE 804(b)(3). *Taylor*, 482 Mich at 378-379.

"Under MRE 801(c), 'hearsay' is defined as 'a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' " *People v Solloway*, 316 Mich App 174, 198-199; 891 NW2d 255 (2016). "Hearsay evidence is inadmissible unless it falls within one of the exceptions listed in the Michigan Rules of Evidence." *Id*. at 199, citing MRE 802. MRE 804(b)(3) provides an exception to the general rule against hearsay when the declarant is unavailable as a witness and allows for the admission of the following:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In this case, Lay was unavailable because he was a jointly-tried codefendant who exercised his Fifth Amendment right not to testify.

Defendant argues that Lay's statement to Walker did not meet the requirements of MRE 804(b)(3) because the statements were not contrary to his penal interests, but instead made to deflect blame from Lay to defendant. We disagree.

Walker testified that Lay told him that he planned the robbery in advance, recruited different people to participate in the planned robbery, called in the delivery to the abandoned house, and then waited on West Genesee for the victim to arrive. Lay also admitted giving defendant the gun that was used to shoot the victim. These admissions clearly had a tendency to subject Lay to criminal liability under an aiding or abetting theory. See *People v Bulls*, 262 Mich App 618, 624-625; 687 NW2d 159 (2004). Even though Lay identified defendant as the shooter, he directly inculpated himself in the planning and execution of the armed robbery. Further, Lay's admissions that he advised defendant to destroy evidence and his implicit warning that Walker should not snitch reflected his conscious belief that he understood that his admissions exposed him to criminal liability. Lay's statements were against his penal interests and admissible under MRE 804(b)(3). Moreover, because Lay inculpated defendant, his accomplice, and himself in the context of a narrative of events to Walker at Lay's initiative without any prompting or inquiry, Lay's whole statement, including the portions that inculpated defendant were admissible as substantive evidence at trial under MRE 804(b)(3). *Taylor*, 482 Mich at 378-379. The trial court, therefore, did not err by admitting Walker's testimony regarding Lay's statements.

Affirmed.

/s/ Michael J. Kelly
/s/ James Robert Redford